IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF WICKES INC., on behalf of Chapter 11 Estate of Wickes, Inc., | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 06 C 0869 |
| J. STEPHEN WILSON, ROBERT SHAW, HARRY CARNEAL, ALBERT ERNEST, JOHN HANSON, JAMES HOPWOOD, WILLIAM LUERS, ROBERT MULCAHY, JAMES O'GRADY, FREDERICK SCHULTZ, CLAUDIA SLACIK, BUILDSCAPE, INC., a Florida corporation, BUILDSCAPE, LLC, a Delaware limited liability company, CYBERMAX, INC., a Florida corporation, ENNOVATIVE COMMERCE SOLUTIONS, INC., a Florida corporation, IMAGINE INVESTMENTS, INC., a Delaware corporation, J&B AVIATION, INC., a Delaware corporation, RIVERSIDE GROUP, INC., a Florida corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Official Committee of Unsecured Creditors of Wickes, Inc. originally filed the present Complaint in the Circuit Court of Cook County, Illinois, County Department, Law Division. Pursuant to 28 U.S.C. § 1452(a), Defendants removed this action to federal court. Plaintiff now seeks to have this case remanded to state court pursuant to 28 U.S.C. §§ 1334(c)(1), (c)(2), or 1452(b). For the reasons discussed below, the Court remands the present

action to the Circuit Court of Cook County, Illinois, County Department, Law Division pursuant to 28 U.S.C.

§ 1334(c)(2).

## BACKGROUND

On January 20, 2004, Wickes, Inc. ("Wickes") filed a voluntary petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Bankruptcy Court"). (R. 1-1, Removed Compl. ¶ 3.) Pursuant to 11 U.S.C. §1102(a), the Trustee thereafter appointed Plaintiff Official Committee of Unsecured Creditors of Wickes, Inc. to represent the interest of all unsecured creditors of Wickes in connection with the bankruptcy proceedings. (*Id.* ¶ 4.) On November 17, 2005, on Plaintiff's motion, the Bankruptcy Court granted Plaintiff the authority to pursue claims, which belong to Wickes itself, against Wickes' shareholders, officers, and directors and their affiliates. (*Id.* ¶ 5; 04-B-02221, R. 1962-1.) Plaintiff based its motion on the inability of the members of Wickes' present board of directors – due to a conflict of interest – to authorize the pursuit or settlement of claims on behalf of Wickes and its bankruptcy estate against their fellow and former directors and officers. (04-B-02221, R. 1923-1.)

On January 18, 2006, pursuant to the authority granted by the Bankruptcy Court, Plaintiff filed the present Complaint in the Circuit Court of Cook County. (R. 50-1, Mot. to Remand, ¶ 4.) The Complaint alleges the following claims: breach of fiduciary duty (Counts I and II), unjust enrichment (Count III), fraud (Counts IV and V), civil conspiracy (Count VI), illegal dividend (Count VII), aiding and abetting breach of fiduciary duty (Count VIII), and deepening insolvency (Count IX). During the relevant time period, Defendants were either officers,

directors, or controlling shareholders of Wickes or other companies affiliated with Wickes. (R. 1-1, Removed Compl. ¶¶ 11-27, 214-295.) The claims alleged in Plaintiff's Complaint arise out of state law, chiefly, Delaware law. (*Id*. ¶¶ 214-295.)

Also on January 18, 2006, Plaintiff filed a lawsuit in the Bankruptcy Court against Stephen Wilson; Buildscape, Inc.; Buildscape, LLC; Cybermax, Inc.; Ennovative Commerce Solutions, Inc.; J &B Aviation, Inc.; and Riverside Group, Inc., commencing Adversary Proceeding No. 06-00098 (the "Adversary Proceeding"). (R. 59-1, Defs.' Opp. to Mot. to Remand, Ex. 2; 04-B-02221, R. 2041-1.) Plaintiff's claims in the Adversary Proceeding encompass avoidance actions arising under the Bankruptcy Code, namely, claims to avoid and recover fraudulent transfers under 11 U.S.C. §§ 544, 548, and 550, and claims to avoid and recover pre-bankruptcy preferential transfers under 11 U.S.C. §§ 544, 547, and 550. (*Id.*) The defendants in the Adversary Proceeding are also Defendants in the present lawsuit, but the present lawsuit includes other Defendants, such as officers and directors of Wickes who are not defendants in the Bankruptcy Adversary Proceeding. (R. 50-1, Mot. to Remand, ¶ 7.)

On February 15, 2006, Defendants in the present lawsuit filed a Notice of Removal because this case is "related to" the Wickes' bankruptcy case. The Court has jurisdiction under 28 U.S.C. § 1334(b).

## **ANALYSIS**

In its motion to remand, Plaintiff argues that it has met the requirements for mandatory abstention under 28 U.S.C. § 1334(c)(2) or, in the alternative, that the Court should exercise its discretion to abstain under 28 U.S.C. § 1334(c)(1) or remand pursuant to 28 U.S.C. § 1452(b). The Court turns to the mandatory abstention provision under Section 1334(c)(2) because it is

3

dispositive.

In federal courts, abstention is generally the exception rather than the rule, however, "in the realm of bankruptcy, abstention is looked upon more kindly," *see Williams v. Stefan,* 133 B.R. 119, 123 (N.D. Ill. 1991), because the "use of the Bankruptcy Code to obtain a favorable forum should not be encouraged." *In re U.S. Brass Corp.,* 110 F.3d 1261, 1265 (7th Cir. 1997). "[S]ection 1334(c)(2) makes abstention in favor of the state court mandatory in noncore proceedings not otherwise within federal jurisdiction." *Id.* at 1268. A proceeding is noncore if it "does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of bankruptcy." *Barnett v. Stern,* 909 F.2d 973, 981 (7th Cir. 1990). On the other hand, "[c]ore proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law." *In re U.S. Brass Corp.,* 110 F.3d at 1268.

Under Section 1334(c)(2), abstention is mandatory when all of the following criteria are met: (1) the state law claim is a noncore proceeding; (2) there is no independent basis for federal jurisdiction other than the bankruptcy proceeding; (3) plaintiff has commenced the action in state court; and (4) the state court can timely adjudicate the matter. *In re DeMert & Dogherty, Inc.*, 271 B.R. 821, 842 (Bankr. N.D. Ill. 2001) (citing *In re Bill Cullen Elec. Contracting Co.,* 160 B.R. 581, 585 (Bankr. N.D. Ill. 1993)); *see also Rheinstrom v. Action Am., Inc.,* 208 B.R. 36, 38 (N.D. Ill. 1997).

I.  **Core Proceedings**

Defendants argue that Plaintiff cannot establish the first requirement under Section

1334(c)(2) because the present matter is a core proceeding. Core proceedings encompass two types of proceedings: (1) those "arising under" title 11 and (2) those "arising in" a case under title 11. *See* 28 U.S.C. § 157(b); *Barnett v. Stern,* 909 F.2d at 979. A lawsuit "arises under title 11" only when it involves a cause of action created or determined by a title 11 statutory provision. *Kalamazoo Realty Venture L.P. v. Blockbuster Entm't Corp.*, 249 B.R. 879, 885 (N.D. Ill. 2000); *see also Zerand-Bernal Group, Inc. v. Cox,* 23 F.3d 159, 162 (7th Cir. 1994) ("the fact that a claim has a distant federal origin does not confer 'arising under' jurisdiction."). To "arise in a case under title 11," a claim must involve "questions that arise during the bankruptcy proceeding and concern the administration of the bankrupt estate, such as whether to discharge a debtor." *Zerand-Bernal,* 23 F.3d at 162; *see also In re H. King & Assoc.,* 295 B.R. 246, 258 (Bankr. N.D. Ill. 2003) ("'Arising in' jurisdiction encompasses administrative matters that arise only in bankruptcy cases – matters not based on any right expressly created by title 11, but without existence outside of bankruptcy.")

Section 157(b)(2) of the Bankruptcy Code contains a non-exhaustive list of core proceedings, including matters concerning the administration of the estate; allowance or disallowance of claims against the estate; counterclaims by the estate; orders in respect to obtaining credit; orders to turn over property of the estate; proceedings to determine, avoid, or recover preferences; motions to terminate, annul, or modify the automatic stay; proceedings to determine, avoid, or recover fraudulent conveyances; determinations as to the dischargeability of particular debts; objections to discharges; determinations of the validity, extent, or priority of liens; confirmations of plans; orders approving the use or lease of property; orders approving the sale of property; and other proceedings affecting the liquidation of the assets of the estate. *See* 28

5

U.S.C. § 157(b)(2)(A)-(O).

Here, Plaintiff contends that the claims in the present lawsuit are noncore proceedings because Plaintiff's Bankruptcy Adversary Complaint contains all of those claims. *See* 28 U.S.C. §157(b)(2)(F) (proceedings to determine, avoid, or recover preferences); 28 U.S.C. §157(b)(2)(H) (proceedings to determine, avoid, or recover fraudulent conveyances). Further, Plaintiff maintains that these claims are noncore because the events that give rise to the removed action took place before Wickes commenced its Chapter 11 bankruptcy proceedings and do not concern the administration of the bankruptcy estate. *See Zerand-Bernal,* 23 F.3d at 162 (core questions must arise during bankruptcy proceeding ); *see also In re Conseco,* 324 B.R. 50, 53-54 (N.D. Ill. 2005) (noncore proceedings only marginally related to bankruptcy and often are state law claims). In response, Defendants set forth five arguments to support their claim that the removed action is a core proceeding. The Court will address each of these arguments in turn.

### A. Subject Matter "Substantially Overlaps"

First, Defendants contend that the present Complaint is a core proceeding because the state law claims "substantially overlap" with the Adversary Proceeding. Specifically, Defendants argue that the "substantial similarities in the subject matter of both the Removed Action and the 'core' Adversary Proceeding make the Removed Action a 'core' proceeding that arises under the Bankruptcy Code, or arises in a bankruptcy case." (R. 59-1, Defendants' Opposition to Plaintiff's Mot. to Remand at 7.) After reviewing both the removed Complaint and the Adversary Complaint, Defendants' attempt to draw factual similarities between these two actions appears to be somewhat strained, especially because the facts underlying the Adversarial Proceeding only comprise a small part of the factual basis for the state law allegations involving corporate

mismanagement.

In any event, Defendants' first argument fails because it is undeveloped and unsupported by the law they cite. The Court first notes that it is not uncommon for a single complaint to have both noncore and core matters. *See, e.g., In re Mulder,* 307 B.R. 637, 640 (Bankr. N.D. Ill. 2004). Yet throughout their response brief, Defendants fail to address Plaintiff's state law claims separately. Indeed, Defendants' lack of a detailed analysis makes it impossible for the Court to discern which of the state law counts Defendants claim are core proceedings.

Further, the majority of Defendants' truncated legal arguments are buried in footnotes. In general, arguments hidden in footnotes are waived. *See Moriarty v. Svec,* 429 F.3d 710, 722 (7th Cir. 2005). Meanwhile, Defendants' legal citations in the body of their brief add little because they fail to explain how the cited cases support their arguments. Simply put, Defendants' presentation of the facts and the law is not clear and does not develop their argument. The law in this circuit is clear – cursory arguments that contain undeveloped legal discussions are waived. *See Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.,* 419 F.3d 576, 581 (7th Cir. 2005); *United States v. Turcotte,* 405 F.3d 515, 536 (7th Cir. 2005); *see also United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006). Therefore, Defendants have waived their first argument.

B.  **Logically Related**

Next, Defendants assert that because the removed action is "logically related" to the Proofs of Claim filed by certain members of the creditors' committee, the present action is a core proceeding. Although Defendants discuss the facts involved in HSBC Bank USA's Proof of Claim, Defendants fail to discuss any specific facts underlying the other Proofs of Claim filed by Owens Corning, Georgia-Pacific Corporation, Bailey Lumber & Supply, PrimeSource Building

Products, and Merrilat Industries. In fact, Defendants attach only some of these Proofs of Claim Forms to the response brief and the forms that Defendants provide contain no explanation of the creditors' claims. In short, Defendants do not set forth a factual basis for the Court to consider their argument. Without more, Defendants have not established that the removed action is "logically related" to the Proofs of Claim. Therefore, this argument also fails.

### C. Property Belonging to Bankruptcy Estate

Defendants further contend that "when a debtor and its creditors initiate litigation and claim an interest in property that is part of the bankruptcy estate, the litigation is considered a core proceeding." (R. 59-1, Defendants' Opposition to Plaintiff's Mot. to Remand at 9.) In the present action, Wickes and the unsecured creditors are not seeking to resolve the ownership of disputed real property or outstanding corporate stock as in the case Defendants cite, *In re Ascher,* 128 B.R. 639, 642 (Bankr. N.D. Ill. 1991). Instead, because the state law claims – which are intangible assets – belong to Wickes, any money damages awarded to Plaintiff will be distributed among the unsecured creditors. An action may be "related to" an underlying bankruptcy case if its resolution has "a direct and substantial impact on the asset pool available for distribution to the estate," however, any such relationship does not necessarily make the proceeding "core." *See Diamond Mortgage Corp. of Ill. v. Sugar,* 913 F.2d 1233, 1239 (7th Cir. 1990); *see also In re Xonics, Inc.,* 813 F.2d 127, 131 (7th Cir. 1987) (case is "related to" bankruptcy when dispute affects amount of property for distribution among creditors). Defendants' third argument is without merit.

### D. Bankruptcy Court's Authorization

Defendants also argue that the removed action is a core proceeding because the

Bankruptcy Court granted Plaintiff the authority to pursue claims which belong to the debtor, Wickes. Specifically, Defendants argue that because the Bankruptcy Court gave authorization for Plaintiff to file lawsuits on behalf of Wickes, this case "could only arise in the context of a bankruptcy case." (R. 59-1, Defendants' Opposition to Plaintiff's Mot. to Remand at 10.)

Under 11 U.S.C. §§ 1103(c)(5) and 1109(b), creditors' committees have standing to initiate proceedings in the name of a debtor as long as the debtor obtains approval from the bankruptcy court. *In re Aluminum Mills Corp.,* 132 B.R. 869, 884-85 (Bankr. N.D. Ill. 1991); *see also In re Xonics v. Photochem., Inc.,* 841 F.2d 198, 203 (7th Cir. 1988) (derivative standing appropriate where "debtor was shirking his statutory responsibilities"). Indeed, under Section 1109, a creditors' committee or other party in interest may appear or be heard on any issue in a debtor's case if the bankruptcy court gives approval. *See FutureSource, LLC v. Reuters, Ltd.*, 312 F.3d 281, 284 (7th Cir. 2002). Defendants, however, do not present any legal authority supporting the proposition that when a creditors' committee brings a lawsuit on behalf of the debtor, such lawsuits are core proceedings, and the Court has found none. Accordingly, Defendants' fourth argument fails.

### E. Bankruptcy Court's Continued Responsibilities

Finally, Defendants contend that if the Court remands this case to state court, the Bankruptcy Court will have two ongoing responsibilities: (1) only the Bankruptcy Court has the authority to lift or modify the automatic bankruptcy stay to permit discovery; and (2) the Bankruptcy Court must approve any settlement in the removed action, as well as the eventual disposition of any recovery by Plaintiff to the creditors of the estate. Oddly enough, Defendants do not argue that these continued responsibilities make the removed action a "core" proceeding.

Further, Defendants do not cite any legal authority in support of such a proposition. Accordingly, this argument also fails.

In sum, Plaintiffs breach of fiduciary duty, unjust enrichment, fraud, civil conspiracy, illegal dividend, aiding and abetting breach of fiduciary duty, and deepening insolvency[1] are not the creatures of bankruptcy law. Instead, they are state law claims which exist outside the realm of the bankruptcy courts. *See Barnett v. Stern,* 909 F.2d at 981. In other words, Plaintiff could have brought these claims on behalf of Wickes whether or not Wickes had filed for bankruptcy. *See In re H. King & Assoc.,* 295 B.R. at 258 (matters that exist outside of bankruptcy are noncore).

## II.     Timely Adjudication in State Court

Defendants also assert that Plaintiff has failed to establish the fourth requirement for mandatory abstention, namely, that the present action would be timely adjudicated in state court. *See In re DeMert*, 271 B.R. at 842. When the non-moving party disputes whether an action can be timely adjudicated in a state court, the moving party bears the burden of persuasion. *Id.* at 843 (citing *In re Georgou*, 157 B.R. 847, 850-51 (N.D. Ill. 1993)). Courts use the following factors to determine the likelihood of timely adjudication: (1) the status of the bankruptcy proceeding; (2) whether the state court proceeding would prolong the administration of the estate; (3) the state court's backlog; and (4) the complexity of the issues. *In re DeMert,* 271 B.R. at 843. Because "the standard for what constitutes timeliness is generally uncertain," this "issue is one of judicial

---

[1] Plaintiff contends that Delaware law recognizes the tort of deepening insolvency, which the Third Circuit has explained as "an injury to the Debtors' corporate property from the fraudulent expansion of corporate debt and prolongation of corporate life." *See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.,* 267 F.3d 340, 347 (3ᵈ Cir. 2001).

10

discretion." *In re Georgou*, 157 B.R. at 851 (internal citations omitted).

Although Wickes filed voluntary bankruptcy under Chapter 11 (reorganization) and not under Chapter 7 (liquidation), according to Plaintiff, Wickes has ceased operating business and has sold all of its tangible assets. The majority of the proceeds from the sale of its assets have been distributed to Wickes' secured creditors. Wickes must now collect its intangible assets, namely, its litigation claims, to pay the unsecured creditors. Moreover, Wickes and the unsecured creditors' committee plan to file a joint plan of liquidation providing for the continued pursuit of litigation claims following the Bankruptcy Court's confirmation of Wickes' plan. Accordingly, there is no administrative urgency in this matter because Wickes does not plan to reorganize, and thus any potential delay in the Circuit Court of Cook County does not significantly affect the administration or liquidation of the Wickes' estate. *See Bates & Rogers Const. Corp. v. Continental Bank*, 97 B.R. 905, 908 (N.D. Ill. 1989).

Nevertheless, Defendants argue that "it is well known that the Cook County court system is among the most overcrowded in the nation." *See J.D. Marshall Int.l, Inc. v. Redstart, Inc.,* 74 B.R. 651, 655 (N.D. Ill. 1987). Plaintiff, however, has provided the Court with the most recent caseload and statistical records of the Circuit Courts of Illinois. (R. 56-1, Memo. Support Mot. Remand, Ex. A.) For jury cases tried in the Law Division of the Cook County Circuit Court, the average time lapse between the date of filing and the date of a verdict is 35.3 months, much less than the four or five years the *J.D. Marshall* court discussed in 1987. In any event, "overcrowded dockets are characteristic of many jurisdictions and not easily avoided." *Bates & Rogers Const.*, 97 B.R. at 908.

Moreover, Defendants' argument that due to the complexity of Delaware law, the federal

11

courts are in a better position to make a determination in this matter is also unfounded. Because of the flexible nature of Delaware's corporate laws and the subsequent number of businesses that incorporate in Delaware, courts and practitioners apply and practice Delaware law throughout the country in both state and federal courts. *See Jones Apparel Group, Inc. v. Maxwell Shoe Co., Inc.,* 883 A.2d 837, 845 (Del. Ch. 2004) ("Delaware's corporate statute is widely regarded as the most flexible in the nation because it leaves the parties to the corporate contract (managers and stockholders) with great leeway to structure their relations, subject to relatively loose statutory constraints and to the policing of director misconduct through equitable review.") In fact, "[m]ore companies are incorporated in Delaware than any other state, so the odds are exceedingly high that one of several companies involved in a merger will be incorporated in Delaware and require Delaware law to apply to their transaction. Additionally, most states look towards Delaware's corporate law decisions for guidance in their own holdings, so when a corporate decision making significant changes in previous jurisprudence is handed down by Delaware's highest court, companies (and law firms) across the nation will listen and likely react." Andrew D. Arons, "In Defense of Defensive Devices: How Delaware Discouraged Preventive Measures in OmniCare v. NCS Healthcare," 3 DePaul Bus. & Com. L.J. 105, 132 (Fall 2004).

Indeed, Illinois courts have applied Delaware law in a variety of actions, including claims related to corporate management and misconduct. *See, e.g., TruServ Corp. v. Bess Hardware and Sports, Inc.,* 346 Ill. App. 3d 194, 281 Ill. Dec. 646, 804 N.E.2d 611 (Ill.App.Ct. 2004) (capital impairment); *Feldheim v. Sims,* 344 Ill. App. 3d 135, 149-50, 279 Ill. Dec. 342, 800 N.E.2d 410 (Ill.App.Ct. 2003) (breach of fiduciary duty); *Spillyards v. Abboud,* 278 Ill.App.3d 663, 667 215 Ill.Dec. 218, 662 N.E.2d 1358 (Ill.App.Ct. 1996) (civil conspiracy in relation to breach of

12

fiduciary duty). Accordingly, Defendants' argument that Delaware law is too complex for the Illinois courts is baseless.

Because the two other mandatory abstention requirements are undisputed, namely, that there is no independent basis for federal jurisdiction other than the bankruptcy proceeding and Plaintiff has commenced the action in state court, the Court grants Plaintiff's motion for mandatory abstention pursuant to Section 1334(c)(2), and hereby remands the case to state court.

## CONCLUSION

For these reasons, the Court grants Plaintiff's Motion to Remand to the Circuit Court of Cook County, Illinois, County Department Law Division.

Dated: May 23, 2006

                                            **ENTERED**

                                            **AMY J. ST. EVE**
                                            **United States District Court Judge**